On May 30, 1941, George Moy was operating a wheelbarrow loaded with a dangerous *Page 178 
chemical, in the course and scope of his employment by the Schuylkill Products Company. The chemical accidentally exploded and the employee was severely burned by fire resulting from the explosion. He was treated for his accidental injuries from May 30, 1941, to June 21, 1941, and died on the latter date as a direct result of the injuries.
At the time of his death, and for five years prior thereto he had been living with one Bessie Veal as his "common law" wife, and he was survived by her, as well as by one Ophelia Moy, to whom it appears from the evidence, he was married in 1928, and two children with Ophelia Moy, one born in 1925, prior to the marriage, namely, Elizabeth Moy, and the other, Bessie Mae Moy, born subsequent to the marriage in 1929.
This suit was brought by Ophelia Moy for herself, individually, and for her two minor children, claiming compensation for herself as surviving spouse, and on behalf of the two minor children. The case was tried by Judge Ellis, but the judgment was rendered by Judge Herget. Judge Herget was of the opinion, as set forth in written reasons for judgment, that the plaintiff had failed to show that she or the minor children were living with the decedent within the intendment of the compensation law or that they were dependents within the intendment of the law, and consequently he rendered judgment dismissing the suit. The plaintiffs have appealed.
The evidence shows that some time in 1931 the decedent, George Moy, and his wife, Ophelia, who were married in Monroe and had their matrimonial domicile in that city, separated, and that George Moy thereupon went to Winnfield, where he shortly thereafter was convicted of a crime for which he was sentenced to the State Penitentiary for a term of six years.
Upon being released from the penitentiary he secured employment in Baton Rouge, and some short time thereafter established his home with Bessie Veal.
Shortly after his death Bessie Veal made inquiries of the New Amsterdam Casualty Company, the insurer of the defendant, as to her rights as the "common law" wife of the decedent, and as a result of her inquiries she was interviewed by an insurance adjuster of the insurance company, Mr. J. Stanley Wagner, on March 6, 1942, allegedly in the presence of another adjuster, Mr. Blakey Adams, who handled work for this same company, but who had nothing to do with this particular case. In this interview of March 6th Bessie Veal, according to a written statement prepared by the adjuster, stated that she and the decedent had lived together since July, 1937; that he had been working for the Schuylkill Products Company about three years when the accident happened; that during all the time that she knew and lived with the decedent he did not see or hear from his wife in Monroe and that he contributed all he earned to help defray household expenses for him and herself and kept out only enough money for cigarettes, car fare and incidentals; and that she felt sure that he did not see his wife or send her any money after she and he started living together. Bessie Veal refused to sign this statement when requested to do so.
On May 5, 1942, A. Milling Bernstein, Esq., attorney of the firm of Hudson, Potts, Bernstein Taylor of Monroe, who was and had been representing the New Amsterdam Casualty Company, as attorney, for some 20 years, interviewed Ophelia Moy and wrote a statement giving a gist of the facts elicited from her, in which it is recited that she stated she was married to George Moy in 1928, and lived with him until about 1931, when he went to Winnfield to work, leaving her in Monroe; that they had two children, Elizabeth Moy, born June 25, 1925, and Bessie Moy, born January 10, 1929; that she had heard nothing from George Moy after he went to Winnfield until after he was arrested and convicted of robbery; that he never came back to Monroe; that she was helped by her brother who lived with her, and that soon after her husband left she went to work for the Monroe Steam Laundry where she has worked ever since, most of the time, for the last seven years; that in 1938 George Moy sent her $5 by mail in the form of a $5 bill; that this was all he ever sent her. Mr. Bernstein states that Ophelia Moy stated that the statement was correct, but that she did not care to sign it.
On March 4, 1942, Ophelia Moy, in her own handwriting wrote a letter to the insurance company as follows:
"Monroe La March 4 1942
Dear Sir i Receive your letter saying i am not entitled his compensation but he *Page 179 
has 2 children 2 girls thir name is elizabeth Moy and Bessie May Moy and they are mindor and i do think you ought to consider then my husband George Moy did supoted the children and i when he live here in Monroe after we parted but he didnt when he lift Monroe he did not so please Sir informe me at a early date about the children benfit for their Father George Moy i was in Baton Rouge on the 16 of Feb. and went to the led plant and talk with them and they told me you had took it in charge and tole me to write you.
From George Moy wife Ophelia Moy Children Bessie May Moy and Elizabeth Moy.
Monroe, La. 1700 Grommont St. in care of donenport Store Box 793."
At the trial, Bessie Veal who apparently had been subpoenaed by the defendant, was put on the stand by the plaintiff and in her testimony she denied that she ever told adjuster Wagner that George Moy had no contact with his wife, Ophelia, or that he had never sent her any money for her and the children, but she admitted that she had made the other statements contained in the statement, and she stated further that she refused to sign the statement because she felt that the adjuster was trying to double cross her and Ophelia. She even stated that the adjuster had offered her $50 to sign the statement, and she denied having seen Mr. Adams at the time of her interview with Mr. Wagner. In her testimony she went further to say that she knew that the decedent sent money to Ophelia in the form of bills ranging from $5 to $25 at divers times during the years she was living with him and that she herself had on six occasions written the letters for decedent enclosing the money. She testified further that during the first or second week of May, 1941, George Moy sent $10 to Ophelia and requested her to come to Baton Rouge for the purpose of discussing a divorce, and that accordingly Ophelia came on a Saturday and slept in the same bed with George Moy on Saturday and Sunday nights of that weekend in Bessie Veal's house for the aforesaid purpose, and that as the result of these discussions George Moy and Ophelia decided to become reconciled, and Ophelia was told to go back to Monroe until George could find a house for her and the children, at which time George would send for them; but that before this could be accomplished, George Moy suffered his fatal accident. In the interim, George Moy continued to live with her, because she felt sorry for him, and sympathetic with Ophelia.
Ophelia testified to the same effect as Bessie Veal and also denied having stated to Mr. Bernstein that she had not seen George Moy since he left Monroe for Winnfield and that all she had ever received from him was $5 sent in 1938. She did admit the other statements contained in Mr. Bernstein's written statement. She testified, as did Bessie Veal, that she received money from George Moy during the last few years of his life, ranging from $5 to $25, and she repeated the story about visiting George Moy at Bessie Veal's house during the second week of May, 1941, and also stated that while George Moy was employed in Winnfield he would come to Monroe about three times per week to see her and the children. She explains her letter to the insurance company to the effect that she was not being supported by her husband by stating that she meant she was not getting full support, although she was getting contributions from him all along for herself and the children.
The other evidence of the plaintiff, on the question of dependency, consists of the testimony of Mr. Davenport, a grocer in Monroe in whose care Ophelia received her mail. In that connection it may be noted that in her letter to the insurance company Ophelia gives her address as "in care of donenport Store" at his address. Mr. Davenport testified that he had seen letters addressed to Ophelia bearing George Moy's return address, and that he recalls definitely having seen her open one such letter in 1939 in which was contained a $5 bill, and another such letter around Christmas, 1940, containing $25 in bills.
The witnesses for the defendants were Messrs. Wagner and Adams and Attorney Bernstein, who testified that the statements obtained by them, although not signed by Bessie Veal and Ophelia Moy, were true statements of the information given at the time they were made. Messrs. Wagner and Adams definitely denied having offered any money to Bessie Veal to obtain her signature, and on the contrary, testified that Bessie Veal had requested money, and *Page 180 
that upon being told that she could not be paid, she refused to sign the statement.
There are two questions to decide from the evidence in this case: first, whether or not the decedent and his wife had become reconciled during the last year of his life, and, second, whether or not he contributed any support to his wife or to his children during the last year of his life.
Obviously, in view of the circumstances brought out by Ophelia Moy and Bessie Veal, it is difficult to believe that a reconciliation occurred between decedent and Ophelia Moy during the second week in May. Moreover, it becomes even more difficult to believe the story of Bessie Veal and plaintiff with reference to this reconciliation when we consider the fact that decedent had his fatal accident on May 30th and died on June 21st, the plaintiff was not notified of the accident nor of the death. Bessie Veal attempts to explain the failure to notify plaintiff of these important events in the life of her reconciled husband by stating that she requested those in charge of the hospital where decedent was taken to notify the plaintiff, but later in her testimony she qualified her statement by saying that she was so upset and confused that she is not sure of having made such a request. This same Bessie Veal testified that even prior to the alleged reconciliation she had on several occasions written letters and sent money to Ophelia Moy on behalf of the decedent, and it is difficult to believe that during the decedent's stay in the hospital of some 22 days she would have remained in such a confused state of mind to the extent of being unable to write Ophelia about the accident. It further appears that plaintiff had no news of the accident and death of her husband until in September, some three months after the accident, when two of the decedent's friends informed her thereof. It appears very strange, had a reconciliation occurred in the first part of May and had it been true that in accordance with this reconciliation George Moy was supposed to send for his wife Ophelia and their children, that she would have been content to remain silent during this period of approximately four months when no news, much less contributions of support were received by her from decedent.
[1] It is our opinion, not only that the evidence fails to show a reconciliation between Ophelia May and George Moy, but further that the evidence fails to show that George Moy was contributing during the last year of his life, an even partial support to Ophelia Moy or the children, as contended by counsel for plaintiff. While it is probable that the decedent did send his wife $5 in 1939, and $25 as a Christmas present in 1940, that these were merely gifts and cannot be considered to have been a contribution towards their support, and it seems clear from the evidence that Ophelia Moy was not counting or depending on the decedent in any manner for assistance in supporting her children. Furthermore, the evidence preponderates to the effect that George Moy's main interest in life was Bessie Veal, and it is shown that for a year prior to his death his weekly wage was only $16.35 and that with this wage he had to support and clothe himself and his concubine, pay the rent on the house in which they lived, and make partial payments on an automobile, radio and stove. These facts not only show decedent's devotion to Bessie Veal and not to Ophelia Moy, but also show decedent's inability to have provided even partial support for Ophelia Moy unless he had given up his life with Bessie Veal. These facts also indicate that Bessie Veal told the truth when she made her statement to Mr. Wagner to the effect that during her relationship with George Moy he did not see or hear from Ophelia Moy, nor send her money and that he "contributed all he earned to help defray the household expenses and kept out for him enough for cigarettes, car fare and for incidentals".
[2] Suffice it to say that under the evidence in this case, we are of the opinion that plaintiff has failed to bear the burden of proof showing dependency of herself and the two minor children on the decedent within the purview of the compensation statute and for that reason the judgment appealed from is affirmed. *Page 181